JOSIE WILLIAMS v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.—73 S. W. (2d) 199.

Division One, June 12, 1934.*

336

*T. E. Francis, S. G. Nipper* and *Vance J. Higgs* for appellant.

*Thomas Bond* and *Earl M. Pirkey* for respondent.

FRANK, P. J.—Action by respondent, plaintiff below, to recover the statutory penalty for the alleged negligent killing of her husband, Samuel Williams. Plaintiff recovered judgment for $10,000 and defendant appealed.

Plaintiff's husband was injured by a collision between an automobile which he was driving and a street car owned and operated by defendant. The collision occurred in St. Louis County where the street car track crosses Marshall Avenue in said county. Marshall Avenue runs north and south and the street car tracks run east and west. The collision occurred on March 8, 1928, and deceased died as a result of his injuries four days later.

The only complaint made on this appeal is that the court erred in giving instructions one, two and three on behalf of plaintiff.

The petition counted on two grounds of negligence: (1) the operation of the street car at a negligent and excessive rate of speed, and (2) negligence under the humanitarian doctrine in that the motorman operating the street car failed to prevent the collision by stopping the street car or slackening the speed thereof after he saw, or by exercising ordinary care could have seen deceased in a position of peril, although he could have done so with the means at hand and with safety to those on board the car.

Plaintiff's Instruction No. 1 submitted the case to the jury under the humanitarian doctrine. The complaint made against this instruction is: (1) there was no evidence that the street car could have been stopped before it struck the automobile, after deceased went into a position of peril, and (2) it was not shown that the failure to check the speed of the street car was, or could have been, the proximate cause of the injury and death. Otherwise stated, the effect of defendant's complaint against this instruction is that the evidence was not sufficient to make a case for the jury under the humanitarian doctrine. On the record presented in this court, defendant is not in a position to question the sufficiency of the evidence. While the record shows that at the close of all the evidence in the case, defendant tendered a demurrer to the evidence and requested certain withdrawal instructions, all of which were refused, no

complaint is made in this court of such action on the part of the trial court. In addition, the record shows that defendant requested and received an instruction submitting the case to the jury under the humanitarian rule, predicating a recovery for defendant upon a finding by the jury that the motorman by the exercise of ordinary care and with the means at hand and with safety to himself and his passengers, could not have stopped the car or checked the speed thereof in time to have avoided the collision after he discovered deceased in a position of peril. Failure to assign as error the adverse ruling on the demurrer, and the refusal of the requested withdrawal instruction, coupled with defendant's own submission of the case under the humanitarian doctrine, precludes it from asserting there was no evidence upon which to base plaintiff's humanitarian instruction. [Heigold v. United Railways Co., 308 Mo. 142, 271 S. W. 773, 774; Kleinlein v. Foskin, 321 Mo. 887, 13 S. W. (2d) 648, 656.]

█ The settled rule of practice in this State is that the failure of a defendant to question the sufficiency of the evidence by demurrer or otherwise, followed by a joinder with the plaintiff in submitting the cause to the jury by instructions, amounts to an admission on the part of defendant that the evidence made a case for the jury. [Carrol v. Young, 267 S. W. 436, 439.] It is equally well settled that where a defendant does question the sufficiency of the evidence by demurrer, and that demurrer is overruled, he does not waive his right to thereafter challenge the adverse ruling on the demurrer by asking and receiving instructions the converse of those given for plaintiff. This is so because such a submission on the part of the defendant is not voluntary but is forced by the adverse ruling on the demurrer to the evidence. The submission of the case under such circumstances, not being the voluntary act of the defendant, he waives no rights thereby because waiver is the voluntary relinquishment or abandonment of a known right. [Kenefick-Hammond Co. v. Fire Insurance Society, 205 Mo. 294, 103 S. W. 957.]

In this case defendant did question the sufficiency of the evidence to make a case for the jury under the humanitarian rule by tendering a general demurrer to the evidence and by requesting certain withdrawal instructions, all of which were refused by the trial court. This record in the trial court placed defendant in a position to challenge in this court the adverse ruling on the demurrer to the evidence, and the refusal of the requested withdrawal instructions, but no such complaint is made in this court. The only assignment of error made here is that the trial court erred in giving plaintiff's instructions one, two and three. Failure to assign as error the overruling of the demurrer to the evidence, and the refusal of the withdrawal instructions clearly indicates that defendant has abandoned the idea that no case was made for the jury. Taking the case as presented, the sufficiency of the evidence to make a case for the

342

jury is not before us for review. [Heigold v. United Railways Co., 308 Mo. 142, 271 S. W. 773, 774; Kleinlein v. Foskin, 321 Mo. 887, 13 S. W. (2d) 648, 656.] To state the situation another way, defendant has abandoned its demurrer, and presents the case here as though no demurrer to the evidence had been asked in the trial court. It is our duty to accept the case as presented to us and determine it from that angle. Treating the case as though no demurrer to the evidence had been requested in the court below, we hold that defendant's joinder with the plaintiff in submitting the case to the jury under the humanitarian rule, precludes it from now claiming there was no evidence upon which to base plaintiff's humanitarian instruction. [Carrol v. Young, 267 S. W. 436, 439; People's Bank of Queen City v. Aetna Casualty & Surety Co., 40 S. W. (2d) 535, 541.]

The next complaint against this instruction is that it erroneously submits alleged negligence and alleged trespass as interdependent rights of recovery.

Plaintiff's evidence tended to show that after the collision and after the street car had come to a stop, deceased was lying upon the ground in an unconscious condition, with both feet across one of the rails of the track, and while lying in that position, the street car resumed motion, ran over deceased and severed both his feet, one at the instep, the other at the ankle. The instruction in question required the jury to find these facts in addition to a finding that the collision could have been avoided by stopping the street car or checking the speed thereof after the motorman discovered deceased in a position of peril. It is appellant's position that the alleged failure to stop the street car or check the speed thereof was negligence, while the alleged starting of the street car after the collision and running same over deceased was a willful and wanton act and therefore a trespass, and that negligence and trespass cannot be submitted as interdependent rights of recovery. There was no showing that defendant's act in starting the street car after the collision and running same over deceased was willful or wanton. On the contrary, the petition, the evidence and the instruction all characterize such act as a negligent act. We rule the contention against appellant. [Evans v. Illinois Central Railroad Co., 289 Mo. 493, 233 S. W. 397.] We are not called upon to determine whether defendant's act in starting the car after the collision was primary negligence or negligence under the humanitarian doctrine. The defendant presents no such question.

The final complaint against Instruction No. 1 is that the latter clause of the instruction assumes that after the street car stopped, deceased was on the track and unable to get off, and that defendant then started the car and ran it over deceased. Whether the latter clause of the instruction does or does not assume these facts is immaterial because a prior clause of the instruction spe-

cifically required the jury to find such facts. Where facts are once properly hypothesized in an instruction, it is not error to assume such facts in a subsequent clause of the instruction. [Windsor v. McKee, 22 S. W. (2d) 66; Burton v. Phillips, 7 S. W. (2d) 715; Costello v. Kansas City, 280 Mo. 576, 219 S. W. 386, 391.]

Plaintiff's Instruction No. 2 submitted the case to the jury under the primary negligence charge of excessive and negligent rate of speed.

Contention is made that this instruction is erroneous (1) because the operation of the street car at twenty miles or more per hour was not, under the conditions shown, negligence in law, (2) because no facts were shown which would warrant a finding that the operation of the street car at that rate of speed was negligence, and (3) because it was not shown that the operation of the street car at that rate of speed was the proximate cause of the injury.

Whether or not a given rate of speed up to and over a public crossing is or is not negligence depends upon the facts and circumstances in each particular case. [Harrington v. Dunham, 273 Mo. 414, 202 S. W. 1066; Montague v. Missouri & K. I. Ry. Co., 305 Mo. 269, 264 S. W. 813; Toeneboehn v. St. Louis & San Francisco Railroad Co., 317 Mo. 1096, 298 S. W. 795, 801; Herrell v. St. Louis-San Francisco Ry. Co., 322 Mo. 551, 18 S. W. (2d) 481, 484.]

In this case the motorman in charge of the street car testified that it was a frequent thing for automobiles and other vehicles to pass over the crossing in question; that he knew that vehicles might be expected there at any time; that such condition had prevailed there for many years and he knew it; that he knew when the automobile turned off the concrete highway into Marshall Avenue and toward the street car track, "there had to be something done very quick." The evidence favorable to plaintiff tended to show that the street car was seventy-five feet from the crossing at that time, running twenty miles per hour and could have been stopped within sixty feet; that the speed of the street car was not checked but it continued its rate of speed of twenty miles per hour up to the point of collision. Without doubt it was the duty of the motorman, under the facts shown, to approach the crossing with the street car under control, and to operate it at such a rate of speed that it could be quickly stopped on appearance of danger. The evidence tended to show that he did not do so, and it made a case for the jury under the primary negligence charge of excessive and negligent speed.

We will next take the contention that it was not shown that the operation of the street car at twenty miles per hour was the proximate cause of the injury.

The evidence was to the effect that when the automobile was within ten feet of the street car track deceased attempted to stop the automobile by putting on the brakes and the rear tires blew

out and caused the automobile to lurch forward onto the street car track. The evidence also showed that at the rate of speed the automobile was going at that time, it could have been stopped within less than ten feet. Based on this evidence defendant contends that the blowing out of the tires and not the speed of the street car was the proximate cause of the collision.

It is true the evidence tended to show that if the tires on the automobile had not blown out and caused the automobile to lurch forward onto the track when deceased applied the brakes, he would have stopped the automobile before it reached the track, and thus averted the collision. It is likewise true that if the motorman had, as was his duty to do under the conditions shown, approached the crossing with the street car under control, he could have stopped it and thereby averted the collision. It thus appears that neither the negligent speed of the street car nor the blowing out of the tires of the automobile, standing alone, was the sole cause of the collision, but that it was caused by the concurrence of both. The fact that both causes concurred to produce the collision, does not exonerate defendant. The rule in this regard is stated in 45 Corpus Juris, 920, as follows:

"As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of the injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than the plaintiff's fault, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause without which the injury would not have resulted, to as great an extent, and that such other cause is not attributable to the person injured. But it must appear that the person sought to be charged was responsible for one of the causes which resulted in the injury." [See, also, Harrison v. Kansas City Electric Light Co., 195 Mo. 606, 625, 93 S. W. 951; Buckner v. Horse & Mule Co., 221 Mo. 700, 711, 120 S. W. 766.]

It was not shown that the blowing out of the automobile tires was due to any fault or negligence of deceased. This being true, the excessive speed of the street car was a proximate cause of the collision although it concurred with the blowing out of the automobile tires in causing the collision.

It is next contended that Instruction No. 2 which submitted the primary negligence of excessive speed should not have been given because deceased was guilty of contributory negligence as a matter of law.

The record shows that defendant submitted the question of deceased's contributory negligence by its own instructions. We have heretofore pointed out that defendant abandonded its demurrer to

the evidence and presented the case in this court as though no demurrer to the evidence had been filed in the trial court. Failure to preserve the adverse ruling on the demurrer to the evidence as an issue in this court, coupled with defendant's submission of the question of deceased's contributory negligence by its own instructions amounts to a concession that such question was one of fact to be determined by the jury.

Further contention is made that the instruction assumes that the automobile was struck by the street car.

The part of the instruction complained of is contained in the latter clause of the instruction. It reads as follows:

"And if you further find from the evidence that at the time said automobile was struck by said street car, etc."

This language, standing alone, does assume that the automobile was struck by the street car, but a prior paragraph of the instruction specifically required the jury to find that fact. Where an instruction once requires the jury to find a given fact, it is not error for the instruction to thereafter assume such fact. (Authorities, supra, on a similar point.)

It is next contended that plaintiff's instructions 1 and 2 submit inconsistent theories of recovery in that Instruction 1 proceeds upon the hypothesis that the collision could have been averted by stopping the street car after a situation of peril arose, whereas Instruction 2 predicates a recovery upon a finding that the street car was being operated at a negligent and excessive rate of speed.

It was not error to submit the case under both theories if the evidence was sufficient to authorize the submission of both. [Rawie v. Railroad, 310 Mo. 72, 274 S. W. 1031, 1034; Montague v. Railroad, 305 Mo. 269, 264 S. W. 813, 817; Beal v. Railroad, 285 S. W. 482, 487; White v. Railroad, 202 Mo. 539, 558, 101 S. W. 14.] Indeed defendant does not contend otherwise. The contention is that the facts of this particular case make the two theories inconsistent. Without doubt the operation of a street car at the rate of twenty miles per hour to and over a public crossing when the operator of the car knew that automobiles and wagons frequently passed over such crossing, and had been doing so for many years, knew that he might expect vehicles at the crossing at any time, and knew that the deceased was in peril when the street car was yet seventy-five feet from the crossing, made the question of alleged negligent speed one of fact to be determined by a jury. The fact that the street car going at twenty miles per hour, could have been stopped and the collision averted after the motorman discovered deceased in a position of peril, is not inconsistent with the idea that the rate of twenty miles per hour was, under the facts shown, a negligent speed.

A charge of negligence under the humanitarian rule and a charge

of negligent speed are not necessarily inconsistent. They are not inconsistent in this case because the evidence shows that the street car approached the crossing at such a rate of speed that it was not under control, and the evidence also shows that the motorman could have stopped the street car before it reached the point of collision if he had acted immediately upon discovering the peril. In determining a like question, this court en banc, speaking through VALLIANT, J., in Haley v. Railroad, 197 Mo. 15, 25, 93 S. W. 1120, said:

"The petition charged that the defendant was negligent in the matter of speed and it also charged that the defendant negligently failed to stop the train in time to avoid the collision after the danger was apparent. These two charges are not necessarily inconsistent, because they might both be true, that is, the train might have been moving at a rate of speed that under the circumstances was negligent and yet it might be that the engineer could have stopped it in time to have avoided the accident by the use of ordinary care. But the defendant would not be liable, under what we call the humanitarian doctrine, if the speed of the train was such as to render it impossible for the engineer by the exercise of ordinary care to have stopped it in time, although the speed may have been negligent. Therefore, whilst it is negligence to run a train into a place where danger of collision is to be expected at such a rate of speed that it could not be quickly stopped on appearance of danger, still it cannot be said that the defendant is liable for failing to stop the train after discovering the peril if in fact the speed was such that the engineer could not stop it."

Again in the case of Farrar v. Railroad, 249 Mo. 210, 217, 155 S. W. 439, we said:

"Though the speed of the car exceeded the ordinance limit, yet it might well be true the motorman discovered, or ought to have discovered, plaintiff's peril in time to have avoided injuring her, in which event it would be the province of the jury to determine which act of negligence was the proximate cause of the injury."

Plaintiff's evidence was that the force of the collision threw deceased from the automobile to the ground, and while lying on the ground in an unconscious condition with both feet across one rail of the car track, the street car resumed motion and ran over deceased, severing both feet.

Defendant contends that plaintiff's instructions 1 and 2 are inconsistent in that instruction one predicates a verdict for plaintiff upon a finding by the jury that deceased's injuries were caused by the collision and the subsequent starting of the car and running same over deceased, while Instruction 2 hypothesizes the collision only as a ground of recovery.

Defendant's Instruction No. 4 directed a verdict for defendant in event the jury found that the motorman could not have stopped

the car or checked the speed thereof and thereby averted the collision after he discovered deceased in a position of peril, unless the jury further found that the motorman started the car a second time thereby injuring deceased, and cutting off both his feet. It appears that this instruction submits the issue of preventing the collision, and the issue of the starting the car a second time as separate grounds of negligence. Submitting the case in this manner, without questioning the sufficiency of the evidence by demurrer or otherwise, amounts to an admission on the part of defendant that the evidence was sufficient to make a case for the jury on either issue. Certainly defendant is not in a position to challenge plaintiff's Instruction 2 which hypothesizes the collision only as a ground of recovery, when it submits the converse of that proposition without questioning the submissibility of that issue. Since defendant admits that the evidence was sufficient to take the case to the jury on either issue, it is not in a position to claim that an instruction submitting the case to the jury on one of the issues, is in prejudicial conflict with an instruction which requires a finding for plaintiff on both issues before a verdict in favor of plaintiff was authorized.

The final contention is that the court erred in giving plaintiff's Instruction 3.

The complaint against this instruction is that it erroneously told the jury that defendant was not entitled to the exclusive use of Marshall Avenue, where its tracks crossed said avenue. The instruction reads as follows:

"The Courts instructs you that if you find from the evidence that on March 8, 1928, Marshall Avenue at the places mentioned in the evidence was an open public street in St. Louis County, Missouri, then the Court instructs you that on said day the defendant was not entitled to the exclusive use of said Marshall Avenue where its tracks crossed said Marshall Avenue, and it was the duty of the defendant in using said Marshall Avenue to operate its street cars on said Marshall Avenue with the same care and vigilance which would be exercised by a person of ordinary care, and that in the exercise of such care it was the duty of the motorman operating the street car in question to be on the watch for vehicles on the eastbound track on said Marshall Avenue or approaching such track on said Marshall Avenue."

It will be noted that the statement in the instruction "that defendant was not entitled to the exclusive use of Marshall Avenue where its tracks crossed Marshall Avenue" was followed by a declaration of what defendant's duties were when using said avenue. While defendant was not claiming the exclusive use of the street, and while the statement complained of was an abstract statement of law, our judgment is that the part of the instruction following such statement, declaring the character of use defendant was en-

titled to make of the street, explained what was meant by the statement and rendered it harmless.

Finding no reversible error in the record, the judgment should be affirmed. It is so ordered. All concur, except *Hays, J.*, absent.

*NOTE: Opinion filed at September Term, 1933, April 19, 1934; motion for rehearing filed; motion overruled at May Term, June 12, 1934.